Jean TURNER *v.* REYNOLDS METALS COMPANY

86-110                                      721 S.W.2d 626

Supreme Court of Arkansas
Opinion delivered December 15, 1986

*Martin, Vater & Karr*, by: *Charles Karr*, for appellant.

*Warner & Smith*, by: *P. K. Holmes, III*, for appellee.

DARRELL HICKMAN, Justice. The only issue in this case is whether an oil and gas lease should be cancelled because of the failure to produce in paying quantities. The case was submitted upon a stipulation of the facts and the chancellor denied cancellation. We find the lease should have been cancelled.

Jean Turner owns 103 acres of land in Sebastian County. An oil and gas lease was entered into with Ryan Glover in 1951 for a primary term of ten years and thereafter as long as oil, gas or other minerals were produced from the land. Turner was to receive a royalty of ⅛ of the sales and free gas for her home. Glover later sold this lease to Reynolds Mining Corporation, the predecessor of Reynolds Metals Company.

On December 29, 1956, Reynolds Metals Company began drilling a gas well which was completed on May 6, 1957. This well, called J.T. Nichols #1, was one of ten wells operated by Reynolds Metals Company in the area known as Gragg Field. Production from these wells was sold to Arkansas Louisiana Gas Company pursuant to a 20 year purchase contract entered into on December 13, 1963. The first production from this well was sold in June, 1964.

On July 8, 1975, the parties entered into an agreement to extend the lease for a secondary term. The habendum clause of this supplemental agreement provided:

> . . . [T]he undersigned, Jean Turner, . . . do hereby stipulate and agree with Reynolds Mining Corporation that the above-described lease is in full force and effect and shall remain in full force and effect for a period of at least five years from this date and beyond said five year period for as long as oil and/or gas is produced from the leased lands or lands unitized therewith. Without limiting the foregoing agreement the undersigned understand and agree that said lease shall remain in full force and effect regardless of the amount of gas that may be produced from the existing well in §25, and shall remain in full force and effect even if no oil or gas is produced during said five year period, from said well or from any other well within said §25; and for the purpose of determining the term of said lease said well shall be deemed to be producing gas in sufficient quantities to maintain said lease in full force and

effect during said five year period.

Reynolds paid Turner $1,038 for the supplemental agreement.

It was stipulated that the revenue produced from the well from 1975 through part of 1982 was as follows:

| Year | Revenues |
|------|----------|
| 1975 | $613.65 |
| 1976 | $785.39 |
| 1977 | $704.10 |
| 1978 | $744.57 |
| 1979 | $913.24 |
| 1980 | $801.45 |
| 1981 | $585.40 |
| 1982 (first half) | $333.39 |

It was also stipulated that Turner received royalties in the following amounts:

| Year | Royalty |
|------|---------|
| 1973 | $ 1.62 |
| 1974 | $11.31 |
| 1975 | $16.24 |
| 1976 | $14.49 |
| 1977 | $18.48 |
| 1978 | $19.58 |
| 1979 | $23.61 |
| 1980 | $20.52 |
| 1981 | $10.98 |
| 1982 | |

Turner's argument is that the well has not produced natural gas in paying quantities and, therefore, the lease is automatically terminated at the end of the secondary period, and she is right. A provision in a habendum clause of an oil and gas lease requiring production, as in this lease, means production in paying quantities. 2 Kuntz, *Oil and Gas* § 26.7 (1964); 2 Summers, *The Law of Oil and Gas* § 306 (1927); See *McLeon* v. *Wells*, 207 Ark. 303, 180 S.W.2d 325 (1944). Generally, production in paying quantities means production which is profitable to the lessee. 2 Summers, *supra*, at § 307; 3 Williams, *Oil and Gas Law* § 604.6 (a) (1985). Therefore, if natural gas was not produced in paying quantities after the five year extension, the

lease may be cancelled. 2 Summers, *supra*, at § 306; *McLeon* v. *Wells, supra.*

This well was not producing in paying quantities. Reynolds pays a contract pumper $1,100 per month for his services on the ten wells, which includes field operation of the wells and maintenance. If Reynolds' expenses were prorated so that 1/10th are assigned to this well, Reynolds lost money every year of the secondary term on this well, and thereafter until suit was filed.

The well never produced much revenue. Reynolds did nothing during that five year period to increase production. It was not until February 20, 1981, that Reynolds took any action when it wrote a letter to Arkansas Louisiana Gas to negotiate a new contract. The supplemental agreement recognized that the production was very poor and extended the lease for five years regardless of production. Once that term expired, the lessee had to produce in paying quantities, which it failed to do.

Reynolds later negotiated a higher purchase price for the gas in February, 1985 and in 1982 drilled a second well which will produce when connected to a pipeline. However, these efforts are irrelevant because they were made after Turner was entitled to cancel the lease. Also immaterial is the fact that Turner received free gas for her home.

Reversed.